Good morning, and may it please the Court, Rachel Robinson for Defendant and Appellant Sharir Bolandian. I'd like to reserve three minutes for rebuttal. And with the Court's permission, I will first address the biased juror issue, then I will turn to Mr. Agarwal's and then, time permitting, I will briefly address the procedural errors at sentencing. The District Court here committed structural error when it failed to excuse a juror who twice stated that he was not sure that he could be fair. That juror was never rehabilitated and that biased juror became the foreperson, guiding the jury's deliberations. This error infected the framework of the trial in such a way that cannot be measured by this Court on review. And this is not the typical jury biased case. Juror number six was not merely attempting to honestly answer the District Court's questions during voir dire. Instead, juror number six heard a full day's worth of evidence. And based on what he heard in that evidence, he affirmatively raised this issue. And when asked by the Court, stated that, honestly, he was not sure if he could be fair. At that point, the District Court had two options. Either excuse the biased juror or remind the juror of his constitutional obligations to be fair and attempt to rehabilitate him. The District Court here did neither. Instead, the District Court, excuse me, told the juror that it was, quote, probably a good thing. And then he placed the onus on that juror to re-raise the issue at the end of the case. There is no precedent for this procedure. And that is for good reason. Jurors must listen to evidence fairly and impartially and must presume, excuse me, presume innocence until the close of evidence and deliberations begin. Right. But counsel, didn't defense counsel, trial counsel say that he had no objection for to juror number six continuing to serve? Trial counsel did. And I would point the court to the Supreme Court, which has stated that courts must indulge every reasonable presumption against waiver of a defendant's fundamental constitutional rights. There can be nothing more fundamental to the right to a fair trial than the right to a fair jury. The waiver here needed to come from Mr. Bolandian himself. And I would look to Rule 11 as an example. Rule 11 requires a defendant to personally waive rights that are materially identical to the right at issue here. We would never allow an attorney to waive a defendant's rights to testify or to remain silent. We would never allow an attorney to waive a defendant's rights to counsel, to waive the right to a unanimous jury. The trial counsel's acquiescence here was simply insufficient to waive that right. And again, I would also point the court to its analysis in Knight. There, the court stated that there were, quote, a limited class of structural errors that cannot be waived and that require automatic reversal. And the right in Knight, in Knight the defendant was challenging the remote participation of jurors. That right is far less profound than the right to an unbiased jury that we have at issue here. And even in Knight, this court found that the waiver was sufficient because the district court sought that waiver from the defendant himself. The waiver was knowing, intelligent, and voluntary. We simply do not have that here. Yeah, the procedure troubles me, that the judge would allow the juror to continue listening to evidence and then if it got to a certain point, put the onus on him to raise his hand and say, oh, I can't be fair. I think, I mean, it's very irregular. It is irregular and I think that that's right here. We cannot know the extent of the harm done to Mr. Bolandian when he had a juror who honestly stated that he was not sure that he could be fair and then became the foreperson. I think this falls squarely within the types of structural errors that this court addressed in Knight that cannot be waivable. There's nothing in this record to indicate that Mr. Bolandian himself knowingly, intentionally, and voluntarily waived his right to an unbiased jury. And unless the court has any other questions about that issue, I would like to turn to the admission of Mr. Agarwal's statement. Mr. Agarwal was the alleged tipper. His hearsay statement that he may have accidentally let slip information to Mr. Bolandian was self-serving and evidently exculpatory. The district court was correct in its initial in its initial ruling to exclude that statement as to Mr. Bolandian. The district court's inexplicable about face was an abuse of discretion and it requires reversal. The only change circumstances here between the district court's initial ruling and its subsequent one was Mr. Agarwal's acquittal at trial based on his defense that if he tipped Mr. Bolandian, it was an accident. And I'd like to take the court back to the severance motion where this issue was fully litigated and fully briefed. And during that hearing, the government conceded that portions of Mr. Agarwal's statement were a false exculpatory. They were not against his interest. The government also conceded that, quote, there's a little bit of blame shifting and the cases on penal interest exception don't allow for the admission of that. As the statement was introduced against Mr. Bolandian, that blame shifting nature remained. The only reason that Mr. Agarwal would have made a statement like that was because he was concerned about the optics and he wanted to shift blame away from himself to Mr. Bolandian. Is there any reason why it can't be blame shifting and also against Mr. Agarwal's interest at the same time? I don't think within the exception here, because the statement should only be admissible if it contains sufficient indicia of trustworthiness, that confrontation and cross-examination are not necessary. That we don't have that here because of the blame shifting nature of the statement. It lacks that indicia of trustworthiness. And Mr. Bolandian should have had the opportunity to confront and cross-examine Mr. Agarwal on the context of that statement. Did Mr. Agarwal actually remember providing Mr. Bolandian with this information? Or was he concerned about the optics of these trades? Because we know that Mr. Agarwal was nervous about the optics of this trade when he made this statement. So refresh me, Agarwal was acquitted? That's correct. And then he came in and testified against Bolandian? He did not. This statement came in as a statement against interest. So it was introduced for its truth. And Mr. Bolandian had no ability to cross-examine Mr. Agarwal about the circumstances surrounding this statement. How did the statement come in? Remind us. The statement came in through a mutual friend, Mr. Roskin, who Mr. Agarwal purportedly made the statement to. And so Mr. Bolandian was able to confront and cross-examine him as to his recollection of the statement. But he did not have the ability to cross-examine Mr. Agarwal as to whether the statement happened, how it happened, why he made it, his incentives for making this statement. It was just presented to the jury for its truth. And the prejudice from the admission of this statement is profound. Mr. Bolandian had presented evidence through an expert that these trades were consistent with his general pattern of trading. He also presented evidence of publicly available information prior to both trades that would have supported a decision to make these trades. There were SEC documents publicly filed. There was chatter on Twitter about how well PLXT and ET were doing. There was an article from Bloomberg about the potential ET merger. And critically here, Mr. Bolandian did testify. And the jury had to weigh his credibility against this statement, whose trustworthiness could not be tested, whose credibility could not be tested. I think given — and Mr. Agarwal was acquitted based on this same evidence of timing. So this court cannot be assured that the admission of this self-serving statement did not materially affect the verdict. And so for that second reason, reversal here is required. And unless the court has any other questions about that, I'd like to briefly turn to sentencing. The district court never calculated the guidelines during the sentencing hearing. And while we know that district courts have broad discretion as to how they calculate the guidelines, they have to calculate them. And here we have nothing. And so this court is being asked to infer the reasonableness of the sentence from nothing. And the Supreme Court in Peel, as well as this court in Cardi, have stated unequivocally that district courts must begin their sentencing analysis with the guidelines. That anchors both the district court's discretion, as well as this court's ability to review the reasonableness of that sentence on appeal. Why was adopting the — why wasn't the adoption of probation's recommendation sufficient to show that the court had calculated the guidelines? So the district court relied on a letter from probation, and that letter did not outline the guideline calculation. It just provided the guideline range, and then it addressed conditions for supervised release. And the district court read that letter saying that it was going to accept those conditions of supervised release, but it was not going to accept probation's recommendation for a sentence. So that letter did not provide any insight into whether or not the district court had, in fact, considered the calculations. And Mr. Bolandian, in his sentencing memo, had challenged probation's calculations as to loss. And he did that based on the district court's prior statement that the district court had intended to consider loss as to each defendant individually. Probation did not do that. And so it is unclear from this record whether or not the district court had intended to accept Mr. Bolandian's loss calculation, and therefore adjust the guidelines accordingly, whether the district court was just accepting the probation's guidelines calculations. We just — we don't know how the district court got there. The guidelines that the — the guidelines that the court used were 33 to 41 months, and he sentenced the defendant to 24 months. What — what are you arguing the guideline range should have been? The guideline range should have been 27 to 33 months, had the district court accepted this. So the sentence is still below those guidelines? It is. And we filed a 28-J letter with this court last week, pointing the court to the Ho-Romero case, which came out, I think, about two weeks ago. And in that case, this court stated that even where a sentence is below the correct guideline range, if the guidelines are not calculated properly, that sentence is still procedurally erroneous, because the district court may have intended to vary to the same degree down from the correct guidelines range. And we — again, we just don't know what the district court's basis here was for giving the 24-month sentence, because the district court just did not, at the outset of the sentencing hearing, calculate the guidelines. The district court listened to the party's arguments without — without ever anchoring that discussion in the guidelines. And I see that I'm short on time, so unless the court has questions, I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you. Good morning, Your Honors. Andrew Roach on behalf of the United States. I'd like to begin where defense left off and talk about the biased — the alleged biased juror issue. First, there's a salient point that the government overlooked in putting in its brief that the government wanted to point out, that prior to this juror being seated on the jury, this juror was asked whether he could be fair to both sides. That's at ER 977. This juror said he could be fair. This juror also explained that his father worked at his uncle's investment firm, and there were no further questions. And the trial began, and after the close of the first day of testimony, after the government had presented its opening argument, and after defense had presented its opening argument, and the government had put on its first witness, an executive from J.P. Morgan, the juror, who was scrupulously honest, mentioned that his uncle might have some sort of connection with J.P. Morgan, and he disclosed it to court. And then, at the request of defense counsel, there was a discussion about further questions, and he was asked whether he could be fair to both sides, and he said, honestly, I'm not sure. Now, the government's position, first of all, is what transpired afterwards was actually defendant waiving this claim. Defendant agreed that no further questions were necessary. He was presented with the opportunity, the government said right then and there, that we can strike this juror if the defense would like, and rather, this defense counsel agreed to have this juror, and he actually set the record, we have no objection to him continuing to serve, and he agreed to have this juror continue to serve. Counsel, can you point to any case ever that allowed this type of procedure as to a juror who said in open court that they can't be sure whether they can be fair? Any case at all? Any case? Well, I think there are cases where they're saying, I'm not sure. I think the Mitchell case is a case where people are expressing, so first of all, he said, to be clear, he said he could be fair to both sides. He could be fair before he heard enough of the case to question whether he could be fair. Well, and to be clear, I think in the 2018 Gonzales case from this court, so after you start to hear evidence, I think it's a slightly different analysis, and in the 2018 Gonzales case from this court, that is when a juror began to express some concerns about being fair after that juror had seen some pretty damning evidence, and in that case, this court said, we do not presume that jurors become biased as a result of exposure to evidence being properly put before them. Well, that isn't quite this case. This case is more about actual business between J.P. Morgan, who was very significantly involved in the periphery of this case, and insider trading. So, are you aware of the Kitchezian case? I am aware of that, Your Honor. Okay, well, didn't we very strongly say that we shouldn't put the onus on the juror to speak up as to whether or not he, in this case, it was her feelings toward the accused were the justifiable consequence of the evidence or due to her earlier life experiences? Yes, and to be clear, the government is not resting its hat on the procedure that you questioned that was irregular. Right, but isn't it the responsibility of the judge, not the juror, and not the parties, to ensure the defendant a fair trial? I mean, you cannot waive your right to a fair trial. Well, you can waive a lot of rights, Your Honor, but it is the court— The defendant can. The counsel can't waive his client's right to a fair trial unless the client says, okay, I'm going to plead guilty or whatever. Well, we could talk about the other issue, about structural waiver, but I think in this case, to answer the court's question, yes, the court has an obligation to ensure jurors are fair. I think what was said on this record of what this juror is saying obviously fell well short. At most, at most, what this called for was additional questioning to determine if there was actual juror bias. It called for something besides letting the juror just sit there and listen to more evidence. I mean, I think there are some people who would not have the strength to, you know, say, oh, I think my prior experience with my father and my uncle's business, this is definitely, you know, that's telling me this is definitely insider trading and this guy's guilty. Well, I want to tease apart a couple things. First of all, I don't think defense really relies on the connection, the uncle's tenuous, at best, connection to J.P. Morgan, which itself was a tangential player. Insert any name of investment bank. You know, J.P. Morgan is the largest bank in the United States, so it just happened to be that. I think where defense is really resting its arguments is he said he was not sure he could be fair. And I think in that case, the fact the day before he said he's not sure he could be fair, and he clearly said it before he was seated, and now that he said he was not sure he could be fair, at best, this is a case of maybe there was further investigation of potential juror bias that was required. But the Sims case that this court has found that failing to investigate potential juror bias is really a procedural error and not a structural error by any means. But even if there were concerns about how the district court handled it, again, the defense waived that, again, at the end of trial when they decided they didn't need to revisit it. And they were given the opportunity, and the government discussed with defense counsel, and they agreed on the record that this juror could continue to serve and the other alternates were excused. So for that reason, we believe that defendant has waived this claim altogether. And I know defense raises certain arguments about how this is a non-waivable claim and it's a structural error. I think this court has struggled with what that dire footnote has said, and I think Mitchell says that. And I think if you look at Knight, when Knight actually laid out and articulated the classes of structural error that exist, it did not hold that a biased juror was one of them. It did mention that a biased adjudicator is, and it mentions the Toomey case, the Tumey case, which again was what the footnote in dire relied on to say that this is a structural defect. But we believe that this is something that the defense counsel could waive, and in fact did waive, and we cite it in our papers where there are cases and there are treatises discussing that issues of juror selection and issues of juror removal are within the scope of authority of an attorney. And this court's case law has been clear that things that are within the scope of an But then moving, even if this court applied what we think is plain air review, which is what this court did in Mitchell, I think when you compare the cases of actual bias to this case, it's quite clear that this juror was not biased at all. In Gonzales, you had a very different situation where a juror was previously married to a drug dealer and then expressed, three times when asked, expressed concern about whether she could be fair, and defense counsel challenged it below. And in Mitchell, this case found that first of all, the raising it below was a crucial difference. But then you look at Mitchell where the case was, the juror had an uncle who was murdered by a drug dealer, and she was, she equivocated whether she could be fair or not. No one challenged that, and this court found that there was not error. So we believe that this juror was not biased. We believe that defendant waived that claim, but even if the court looks at any potential bias, there was none here, and consistent with this court's decision in Mitchell, that that was not a grounds to reverse. I'd like to go to the next point, the Agarwal statement, unless the court has any questions about juror. So just to lay out the facts a little bit, so there were three different defendants involved here. There was Agarwal, the insider who worked at J.P. Morgan, there was Blandian, the man in the middle, and then there was Sadiq, the third defendant. So after defendant number two, Blandian and Sadiq, traded on it, Agarwal had a, about a couple months afterwards, Agarwal had a lunch conversation or a dinner conversation with his friend Leo Roskin. Leo Roskin was aware that Agarwal had been trading with Blandian in an account and had incurred substantial losses with Blandian regarding various trades they had made. During the context of that conversation between two former J.P. Morgan investment bankers, talking about trading, which they do, talking about the losses, at that point Blandian said, I might have accidentally let it slip about E.T. once or twice, which begs the question whether it was an accident or it happened twice, let it slip to Blandian about the E.T. deal and then afterwards he told me our losses are taken care of. Now when Leo Roskin heard that statement, he was concerned. He thought it could be insider trading. He told Agarwal to get an attorney and they stopped that and so then at Blandian's trial. Wait a second, I thought Agarwal was acquitted. I mean he's acquitted, I'm sorry. Yeah, Agarwal was acquitted. Okay, so the actual guy who did the insider trading is acquitted. Well, they all did insider trading. The actual insider. The actual insider. Yeah, the actual insider who received the material non-public information through his job at J.P. So obviously Mr. Blandian committed insider trading. The government's theory was he got the inside information from the insider, Agarwal. But they were partners. Wasn't Agarwal also benefiting from the insider trading? Correct, correct. They were informal partners in a trading, in a trading aspect and your honor's right. One of the elements of insider trading is the insider has to get a and so the government's theory in this case. So they're both insider trading? Correct. So how come Agarwal got acquitted? Well, they were tried separately, your honor. They had different juries. Which begs the question, was this jury biased? Well, again respectfully, we don't believe so. But then, but then going to, going to the actual admission of the statement, obviously they're not arguing law of the case. It was quite clear that the court could consider. But the court's prior comment when it severed the trials was really about the, the differing defenses, the antagonistic defenses that these defendants might have. Mr. Agarwal's accidental disclosure and Mr. Blandian, Mr. Sadiq's no inside information. So they were severed and, you know, that comment was not a law of the case. And the comment here was admitted Bland's trial and it was very reliable. And I just want to touch to the prejudice point really. Even if the, even if the statement was there, there's really no prejudice. Because in this case, there was another example of someone getting a tip off of E.T. To Tran, who was one of the government's witnesses, he was actually told by Mr. Agarwal to buy E.T. And he did buy E.T. and he profited from it. But the difference there is, there was no evidence to suggest that To Tran got material non-public information. Because all the circumstantial evidence shows that To Tran just made a small bet on it and profited a little bit. Conversely, Blandian and Sadiq went all in after they had lost a lot of money and they went all in on highly leveraged options and in turn profited handsomely. So I don't think there's any prejudice on that. But I want to turn with my remaining time to the last point, the sentencing issue. I think this court has been clear that this court can infer from the record whether the guidelines were calculated properly and appropriately. And I acknowledge that the district court could have done a better job here and explicitly announcing and calculating the guidelines. But what the he asked the defendant if he had received him. The defense counsel said yes. And then he began to go through the recommendation letter. The recommendation letter did have a guidelines calculation and the other documents for which that is built upon, the pre-sentence report and the addendum, those lay out the math. And there's a point here in the government's supplemental excerpts of record, if you look at the addendum, the argument that they were making with respect to the loss amount, which is really without merit that they should be separate. But that argument was addressed and rejected in the PSR addendum. Did the district court ever roll on that objection? Well the district court was not required to in this case law because it's actually just a legal objection. And so if you look at the Aloba case and the Doe case, the Doe case which is cited in the briefs, this court's case law is clear in 32. It has to rule on factual, on factual disputes. But here this was a legal dispute and frankly it was a meritless legal dispute because the law was quite clear that it is a joint activity and so the loss amount should be combined. But I want to just jump to the third point of really even if there was error and not expressly calculated guidelines ahead of time, the defendant really hasn't shown a reasonable probability that his sentence would be any different. The guidelines that the court, that were in the recommendation were in fact the correct guidelines. But moreover, no one was really arguing the guidelines at this case, in this case. The defense's presentation really relied on the 3553A factors and went through some length of all the recommendation. And the government didn't really argue the guidelines either. And then when the court imposed the sentence, the court itself mentioned I'm not really looking at the length of the recommendation. I'm just looking really at the fact that it was a recommendation. So I think ordinarily while there is, while ordinarily why this court's case law says if there is a guideline error that might be something to reverse and remand, this is not one of those cases because first of all the guidelines were correct and defendant hasn't shown that there's a reasonable probability that his sentence would be any different. All right. Thank you, counsel. Thank you, your honor. I first want to note that it is irrelevant what juror number six stated during voir dire because the juror then came back and informed the court that I am not sure that I can be fair here. That is not a potential bias. That is actual bias. This court has defined actual bias as the existence of a state of mind that leads to an inference that a person will not act with entire impartiality. A statement that honestly I'm not sure if I can be fair falls outside of that definition. And so we are dealing with actual bias here. Counsel, can I ask you to address the Mitchell case though? Because there when questioned about her ability to be impartial, the jurors, juror gave ambiguous answers like, I don't think so. So tell me why this is different. Sure. So in Mitchell, this court found that the only time that the district court directly asked her, can she be fair? She unequivocally said yes. She was rehabilitated. Here we have an unrehabilitated juror who never unequivocally stated that he could be fair. He never even stated that he would try to be fair. And that in Gonzalez, that's what happened. The juror there stated that she would try to be fair. And that was insufficient. That juror was too biased and that case was reversed. Our case is much more similar to Gonzalez than Mitchell. And then with respect to the waiver, Mr. Bolandian never waived this right. He was never asked if it was, if he agreed to allow this bias juror to stay, it was his right to waive and he did not do so. And so for that reason, the waiver analysis just simply does not apply here. And finally, to the extent that this court considers whether or not this is structural error, Dyer v. Calderon is clear that this is structural error. The court's analysis in Knight applies in Gonzalez. This court considered biased, a biased juror, structural error. And so there's simply no reason for this court to reconsider that at this point. And unless the court has other questions, I will submit. All right. Thank you, counsel, both counsel. U.S. v. Bolandian is submitted and this session of the court is adjourned for today. Thank you. All rise. This court for this session stands adjourned.
judges: WARDLAW, ALBA, Brown